ALVAN L. PRIVETTE, JR., APPELLANT, *v.* GUY FAULK-
NER, SPECIAL ADMINISTRATOR OF THE ESTATE OF
EVERETT A. BURKE, DECEASED, RESPONDENT.

No. 7992

June 7, 1976                                        550 P.2d 404

*Erickson, Thorpe & Swainston,* of Reno, for Appellant.

*Echeverria & Osborne,* of Reno, for Respondent.

## OPINION

By the Court, ZENOFF, J.:

On October 16, 1971, braced with several sips from a bottle of brandy, Alvan L. Privette, Jr., Everett Burke and Luke Aluevich, all of Reno, embarked upon a hunting trip to eastern Nevada. Burke, owner of the vehicle, began the driving chores and was known to be the driver until the party reached Fernley, Nevada. After passing through Fernley, neither Burke nor Privette remembered anything including the identity of the driver of Burke's automobile until after the tragic accident which took the life of Luke Aluevich.

Twenty miles east of Lovelock, Nevada, the Burke vehicle narrowly passed a vehicle driven by Mathias Meehan, swerved in front of a semi-truck and trailer in the right lane, hit a roadside sign, swung back into the highway separation dividing the lanes of the expressway, struck Meehan's automobile, careened into a ditch, became airborne for approximately 80 feet and then flipped end over end until it came to rest. All three men were thrown from the vehicle. Aluevich was killed almost immediately and Privette and Burke were badly injured. At trial, Meehan testified that he was traveling approximately 75 miles per hour when he was overtaken by the Burke vehicle whose speed he estimated to be approximately 90 miles per hour.

Privette commenced an action for his injuries against Burke who later died from causes not related directly to the accident. The suit was continued against the Special Administrator of Burke's estate and culminated in a jury verdict in favor of the defendant.

On appeal, we are presented with the following issues:

1. Did the trial court err in refusing to instruct the jury that, absent direct evidence, there exists a presumption that the owner of a vehicle is the driver if he is riding in it at the time of an accident?

2. Was it error for the trial court to permit counsel to tell the jury in closing argument that contributory negligence in "any degree" would preclude recovery?

3. Was error committed when the trial court gave a jury instruction reciting verbatim a criminal statute defining principals to a crime?

4. In view of the nature and character of the evidence produced at trial, was it error for the trial court to instruct the jury on the defense of assumption of risk?

At trial, the circumstantial evidence establishing the identity of the driver at the time of the accident was conflicting. Burke, owner of the nearly new automobile, was known to be driving from the time it was loaded with supplies to the time the hunting party drove through Fernley. The party had scheduled no stops until reaching Lovelock. Privette remembers that he was in the back seat, Aluevich in the front passenger's seat and that Burke was driving. Burke's physical injuries arguably suggested that he struck the steering wheel upon exiting the vehicle. However, neither Privette nor Burke could remember who was driving at the time of the mishap nor any of the details.

Evidence consisting of the position of the bodies after the accident, the nature of their respective injuries, past experience

of others on prior hunting and fishing trips with Privette and Burke where Privette had taken over the driving chores when he felt Burke was too intoxicated to drive and other evidence indicating that Burke habitually would turn over the driving duties to other companions on such trips contradicted the positive evidence that he was the driver.

That Privette may have been driving the car at the time of the accident obviously is of great importance in determining the issue of Burke's negligence. None of the evidence presented at trial could be characterized as direct evidence bearing on the issue as to the identity of the driver. Direct evidence is evidence which, if believed, proves the fact in issue without the aid of an inference. Berger v. People, 224 P.2d 228 (Colo. 1950); Sullivan v. Mountain States Power Co., 9 P.2d 1038 (Ore. 1932). Thus, if the law of this state embraces the owner-driver presumption, the jury should have been instructed accordingly. See NRS 47.200.

Presumptions are no more than rules of evidence predicated on probability and general experience, which, in the present context, is to say that experience has shown that the owner of a vehicle if present in the vehicle is likely to be its driver. This experience translates into an identical probability which, together, form the foundation for the owner-driver presumption. See Thayer, A Preliminary Treatise on Evidence at the Common Law, 314 (1898).

Because the legislature did not include the owner-driver presumption in NRS 47.250[1] which lists disputable presumptions

---

[1]NRS 47.250  Disputable presumptions.  All other presumptions are disputable. The following are of that kind:
1.  That an unlawful act was done with an unlawful intent.
2.  That a person intends the ordinary consequences of his voluntary act.
3.  That evidence willfully suppressed would be adverse if produced.
4.  That higher evidence would be adverse from inferior being produced.
5.  That money paid by one to another was due to the latter.
6.  That a thing delivered by one to another belonged to the latter.
7.  That things which a person possesses are owned by him.
8.  That a person is the owner of property from exercising acts of ownership over it, or from common reputation of his ownership.
9.  That official duty has been regularly performed.
10.  That a court or judge, acting as such, whether in this state or any other state or country, was acting in the lawful exercise of his jurisdiction.

of that type, does not preclude its existence. The list is illustrative, not exclusive. See People v. Agnew, 107 P.2d 601, 604–05 (Cal. 1940).

The weight of authority, it appears, favors the owner-driver presumption. Brayman v. National State Bank of Boulder, 505 P.2d 11 (Colo. 1973); Sprader v. Mueller, 121 N.W.2d 176 (Minn. 1963); Moore v. Watkins, 293 S.W.2d 185 (Tenn. App. 1956); cf. Rocky Mt. Produce v. Johnson, 78 Nev. 44, 369 P.2d 198 (1962), and Zimmerman v. District Court, 74 Nev. 344, 332 P.2d 654 (1958); contra, Fidelity & Casualty Co. of N.Y. v. Western Cas. & S. Co., 337 S.W.2d 566 (Mo. App. 1960), but compare Campbell v. Fry, 439 S.W.2d 545 (Mo.App. 1969). The rationale supporting the majority view is persuasive and we now formally acknowledge the existence of such a presumption as embodied within the law of this state.

As previously stated, there is substantial conflict in the record as to who was driving the car at the time of the accident. At this juncture in the proceedings, we have no way of ascertaining whether Privette was denied recovery at trial because the jury would not speculate as to who was driving the car or whether he was denied recovery because it was found that he was contributorily negligent or that he assumed the risk. However, an examination of the record does not obviate the possibility that the jury, heeding the court's admonition against speculation, denied recovery to Privette because the circumstantial evidence presented by both sides was too equivocal and

---

11. That a judicial record, when not conclusive, does still correctly determine or set forth the rights of the parties.

12. That a writing is truly dated.

13. That a letter duly directed and mailed was received in the regular course of the mail.

14. That a person not heard from in 7 years is dead.

15. That a child born in lawful wedlock is legitimate.

16. That the law has been obeyed.

17. That a trustee or other person, whose duty it was to convey real property to a particular person, has actually conveyed to him, when such presumption is necessary to perfect the title of such person or his successor in interest.

18. In situations not governed by the Uniform Commercial Code:

(a) That an obligation delivered up to the debtor has been paid.

(b) That private transactions have been fair and regular.

(c) That the ordinary course of business has been followed.

(d) That there was good and sufficient consideration for a written contract.

so hopelessly conflicting as to support anything but speculation. Had the instruction on the owner-driver presumption been given as requested, the burden of proof would have shifted to the defendant to counter the presumption and the result, very likely, would have been different. NRS 47.180.[2]

Because reversal for a new trial is warranted, further discussion of additional purported errors is unnecessary. However, we note some merit in the issues advanced which can be avoided at retrial.

Reversed and remanded.

BATJER and THOMPSON, JJ., concur.

GUNDERSON, C. J., dissenting:

I respectfully dissent.

The majority here reverse a jury's solemn verdict, made after assessing all the evidence in the light of their combined wisdom, because the district court declined to instruct the jury to accord special and continuing weight to one item of evidence, i.e., ownership of the vehicle all the travelers were using.

Concerning this, my brethren say that the "weight of authority" recognizes the existence of a presumption that the owner of the vehicle was driving, if such vehicle was involved in an accident. However, while I note that although the majority cite a total of seven cases, only three of those cases even colorably support their position,[1] and of those three at least one is based upon an express statute.[2] Two of the remaining cases hold against any owner-driver presumption whatever,[3] and the others are not even remotely in point.[4] My very limited

---

[2]NRS 47.180 . Presumptions generally: Effect; direct evidence.

1.  A presumption, other than a presumption against the accused in a criminal action, imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence.

2.  As applied to presumptions, "direct evidence" means evidence which tends to establish the existence or nonexistence of the presumed fact independently of the basic facts.

[1]Brayman v. National State Bank of Boulder, 505 P.2d 11 (Colo. 1973); Sprader v. Mueller, 121 N.W.2d 176 (Minn. 1963); Moore v. Watkins, 293 S.W.2d 185 (Tenn.App. 1956).

[2]Moore v. Watkins, cited note 1.

[3]Fidelity & Casualty Co. of N.Y. v. Western Gas & S. Co., 337 S.W.2d 566 (Mo.App. 1960); Campbell v. Fry, 439 S.W.2d 545 (Mo. App. 1969).

[4]Rocky Mt. Product v. Johnson, 78 Nev. 44, 369 P.2d 198 (1962); Zimmerman v. District Court, 74 Nev. 344, 332 P.2d 654 (1958).

research has revealed at least five cases wherein the existence of any owner-driver presumption was rejected.[5] Thus, if adding up the decisions for and against my brethren's position is significant, I am not at all sure they gain support from the exercise.

Moreover, I note that at least some states which recognize an owner-driver "presumption" do so only in the context of another rule, which recognizes that such "presumption" evaporates when any contrary evidence is adduced.[6] That is the case in two, if not all three, of the states upon whose decisions my brethren rely.[7] However, it would not be the case in Nevada, for in Nevada, when a true presumption is recognized, it not only fixes the burden of going forward with evidence, but shifts the burden of proof.[8]

In the instant case, there was evidence that Privette, rather than Burke, was driving.[9] Thus, in Tennessee and Colorado, upon whose decisions my brethren rely, Privette would not be entitled to an instruction concerning an owner-driver presumption, because such presumption would have evaporated as soon as Burke met his burden of going forward with evidence. However, under the Nevada mutation of the Tennessee-Colorado rule, which my brethren here adopt, the case is otherwise; and as my brethren candidly state, despite Burke's evidence, allowing Privette such an owner-driver presumption, "the result, very likely, would have been different." (If my brethren adopted an "evaporating" presumption, like that recognized by the decisions they cite, the result would not be affected at all, of course.)

The Missouri Supreme Court has said: "The recognition of

[5]Fidelity & Casualty Co. of N.Y. v. Western Gas & S. Co., cited note 3; Cambell v. Fry, cited note 3; Morris v. Bigham, 170 S.E.2d 534 (N.C.App. 1969); Greene v. Nichols, 161 S.E.2d 521 (N.C. 1968); Parker v. Wilson, 100 S.E.2d 258 (N.C. 1957).

[6]Brayman v. National State Bank of Boulder, cited note 1, in connection with American Ins. Co. v. Naylor, 70 P.2d 349 (Colo. 1937); Lawing v. Johnson, 355 S.W.2d 465 (Tenn.App. 1961); Rodney v. Staman, 89 A.2d 313 (Pa. 1952), in connection with Waters v. New Amsterdam Casualty Company, 144 A.2d 354 (Pa. 1958).

[7]Moore v. Watkins, cited note 1; Brayman v. National State Bank of Boulder, cited note 1, in connection with American Ins. Co. v. Naylor, cited note 6.

[8]NRS 47.180(1) and NRS 47.200(3).

[9]Privette testified that Burke frequently turned the driving over to him when drinking. Carl Reese and Mrs. Burke testified similarly. Injuries sustained by Burke and Privette arguably might sustain a finding that Burke was not driving.

such a presumption goes too far and so interferes with the plaintiff's burden of proof as to make its adoption unwise. In addition, the recognition of such a far-reaching proposition properly belongs to the legislature, rather than to the judicial branch of our state government."[10] Indeed, one even may question whether such a presumption is constitutional, or, rather, is so lacking in rational basis as to offend due process.[11]

Rationally, Burke's ownership of the vehicle these travelers were using was but one piece of evidence, having slight significance compared to other evidentiary matters considered by the jury. They obviously saw this, and accorded his ownership no more significance than it was worth, considered in the light of all other known facts. My brethren, however, would undo the jury's work, exalt the fact of Burke's ownership above all other facts, holding it significant not only as evidence, but sufficient in and of itself to shift, permanently, from plaintiff to defendant, the burden of proving who was driving, when the vehicle occupied by all left the road.

MOWBRAY, J., concurs.

_____

[10]Fidelity v. Casualty Co. of N.Y. v. Western Gas & S. Co., 337 S.W.2d 566, 572.

[11]See for example: Western & Atl. R. Co. v. Henderson, 279 U.S. 639 (1929), striking a presumption which affected the burden of persuasion.